## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                               :

VISIONSOFT CONSULTING, INC.    :
                                :

        Plaintiff,        :

                                :     Case No. 3:19-cv-11526-BRM-DEA

        v.             :

                                :

COGNITUS CONSULTING, LLC, *et al.*  :      **OPINION**

                                :

        Defendants.     :
_____:

**MARTINOTTI, DISTRICT JUDGE**

      Before this Court is Defendants Cognitus Consulting LLC ("Cognitus"), Cognitus Consulting IT Services Private, Ltd. ("IT Services") and Gallop By Cognitus Consulting's ("Gallop") (collectively, "Defendants") Motion to Dismiss Plaintiff VisionSoft Consulting, Inc.'s ("VisionSoft") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) alleging this Court has no personal jurisdiction over VisionSoft and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 14.) Also before the Court is Defendants' Motion for Judicial Notice of Certain Information pursuant to Rule 201 of the Federal Rules of Evidence. (ECF No. 13.) VisionSoft opposes the Motions. (ECF No. 15.) Defendants filed a Reply to both Motions. (ECF No. 18.) Having reviewed the parties' submissions filed in connection with the Motions and having heard oral argument pursuant to Federal Rule of Civil Procedure 78(a) (ECF No. 27), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Dismiss is **GRANTED**, and Defendants' Motion for Judicial Notice is **DENIED** as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background[1]

VisionSoft is a corporation organized and existing under the laws of the Commonwealth of Virginia, though its corporate headquarters is located at Windsor Business Park Bldg. 4B, 186 Princeton Hightstown Rd., West Windsor, Mercer County, New Jersey 08550. (Compl. (ECF No. 1) ¶ 1.) Cognitus is a limited liability company organized in Tennessee with its principal office in Brentwood, Tennessee. (*Id.* at ¶ 2.) IT Services is a company organized under the laws of Telangana State, India, and having offices in Hyderabad, India. (*Id.* ¶ 3.) IT Services is owned and operated by a Cognitus member, Pat Sathi. (*Id.*) Gallop is the implementation and consulting arm of Cognitus, with an office in Miami, Florida. (*Id.* ¶ 4.) Gallop is owned and operated by Cognitus member Francisco Verdesoto. (*Id.*)

VisionSoft developed a software-migration product named Haneya® that enables users to transfer their versions of the flagship product of German software company SAP robotically to the latest SAP software platform. (*Id.* ¶ 13; *see also* Pl.'s Opp. Br. to Mots. (ECF No. 15) at 1.) On September 24, 2017, VisionSoft entered what was called a Lead Partner Agreement (the "LPA") with Cognitus and, around the same time, a Mutual Non-Disclosure and Confidentiality Agreement (the "NDA") that pertains to the subject matter of the LPA. (*Id.* ¶ 14). Under the

---

[1] For the purposes of the motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Such material includes "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

LPA, Cognitus was to find clients for VisionSoft's product in return for a fee of 20% of related sales. (*Id.* ¶ 16.) The LPA further provided that Cognitus would not introduce a competing product for 10 years and would not compete with VisionSoft in offering implementation services. (*Id.*) Though Cognitus did introduce the VisionSoft product to customers, VisionSoft terminated the LPA in March 2018 because Cognitus had been unsuccessful in generating any sales of the VisionSoft product. (*Id.* ¶ 18.)

After the LPA was terminated, Cognitus and "associated entities" developed and introduced a competing product called Gallop that incorporated features of the VisionSoft product and copied its architecture and manuals. (*Id.* ¶¶ 19, 21, 23). In so doing, Cognitus is alleged to have breached the NDA (Count I), infringed VisionSoft's copyrights related to its migration product (Count II), violated the New Jersey Trade Secrets Act (Count III), and engaged in "unconscionable consumer practices" as contemplated by the New Jersey Consumer Fraud Act (Count IV). (*Id.* ¶¶ 24-36.)

### B. Procedural History

On April 26, 2019, VisionSoft filed a Complaint. (ECF No. 1.) Defendants filed a Motion for Judicial Notice on June 12, 2019. (ECF No. 13.) That same day, Defendants also filed this Motion to Dismiss. (ECF No. 14.) VisionSoft filed its opposition to the motions on July 3, 2019. (ECF No. 15.) After this Court granted Defendants' requested extension for responding to VisionSoft's opposition, Defendants filed a Reply on July 10, 2019. (ECF No. 18.) Two days later, VisionSoft filed what it termed a supplemental brief in opposition, claiming Defendants had raised a new issue in their Reply and seeking the Court's permission to have this supplemental brief considered for the motions. (ECF No. 19.) Defendants objected to

VisionSoft's application for a *sur-reply*. (ECF No. 20.) The Court heard oral argument on July 23, 2019. (*See* ECF No. 23.)

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(2) Standard

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992)). Pursuant to Federal Rule of Civil Procedure 4(e), a district court may exercise personal jurisdiction according to the law of the state where it sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see also Metcalfe*, 566 F.3d at 334 ("Minimum contacts can

be analyzed in the context of general jurisdiction or specific jurisdiction."). Specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, 571 U.S. 117, 127 (2014) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n. 8, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction requires continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King Corp.*, 471 U.S. at 474 and *Int'l Shoe Co.*, 326 U.S. at 316).

While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum

for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*.") (emphasis added). "It may be that whatever special rule exists permitting continuous and systematic contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990).

### B. Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege

"more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While the court generally may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## III.    DECISION

Defendants contend the Complaint should be dismissed on a variety of grounds that can be divided into two categories: issues of standing and issues germane to Rule 12(b)(6). To begin with the standing issues, Defendants challenge this Court's jurisdiction over this action, contending that VisionSoft cannot maintain a lawsuit pursuant to Federal Rule of Civil Procedure 17 because its corporate charter in Virginia expired before the filing of the Complaint and, because of the length of this alleged expiration, cannot be reinstated under Virginia law. (Defs.' Br. in Opp. to Mot. (ECF No. 14-1) at 5.) Furthermore, Defendants argue the lawsuit should be dismissed as to IT Services because this Court has no personal jurisdiction over this out-of-state entity. (*Id.* at 6.) Should this Court decide it has personal jurisdiction over IT Services, Defendants contend service of process as to IT Services was ineffective because it was not effectuated under the Hague Convention, as required by India law. (*Id.* at 9.) Finally, Defendants argue the lawsuit should be dismissed as to Gallop because it is not a legal entity but rather a service offered by Cognitus to customers. (*Id.* at 8-9.)

As to its Rule 12(b)(6) arguments, Cognitus contends the Complaint should be dismissed as to Count I's breach-of-contract claim because there was not a Noncompetition Agreement entered into by both VisionSoft and Cognitus, while the LPA expressly contemplates Cognitus's ability to market a product similar to VisionSoft. (*Id.* at 12-14.) Cognitus seeks to have Count II's copyright infringement claim dismissed because VisionSoft has not identified any actual copyrights related to its Haneya® product. (*Id.* at 14-15.) Finally, Cognitus argues Count IV's New Jersey Consumer Fraud Act claim should be dismissed because VisionSoft has no grounds to assert such an action as Defendants never were customers of VisionSoft. (*Id.* at 16-18.) And even if the Court concludes for the purposes of this Motion

that Cognitus was a customer of VisionSoft as contemplated by the Consumer Fraud Act, the Complaint still should be dismissed, Cognitus contends, because the Complaint fails to meet the heighted pleading required for such a fraud claim by Federal Rule of Civil Procedure 9(b).

### A. Motion to Dismiss Pursuant to Rule 12(b)(2)

#### 1. VisionSoft

While Cognitus challenges this Court's personal jurisdiction over this action pursuant to Rule 12(b)(2), essentially Cognitus contends that VisionSoft does not have standing pursuant to Rule 17(b) because VisionSoft is not a corporation existing under the laws of Virginia. Cognitus's Judicial Notice Motion asks this Court to recognize, pursuant to Federal Rule of Evidence 201, information on the Virginia State Corporation Commission website to establish that VisionSoft was purged from the agency's list of active corporations because its charter was terminated[2] as a predicate to finding that VisionSoft has no standing to bring this action under Federal Rule of Civil Procedure 17. (Defs.' Br. in Supp. of Mot. for Judicial Notice (ECF No. 13-1) at 2.)

Defendants argue Rule 201 requires a court to take judicial notice "if requested by a party and supplied with the necessary information." (*Id.* (quoting Fed. R. Evid. 201(d).) Defendants contend the information on this website, "which is maintained by the very agency that charters corporations in the Commonwealth of Virginia[,] is the very sort of information which should be judicially noticed under Fed. R. Evid. 201." (*Id.* at 3.)

VisionSoft counters that it has been in good standing since its organization registered in Virginia in 2004, and that Virginia's State Corporation Commission ("Agency") has

_____

[2] The State Website at issue is https://sccefile.scc.virginia.gov/Find/Business.

acknowledged making an error by issuing a Certificate of Good Standing that VisionSoft attached to its Brief in Opposition to the Motions. (Pl. Br. in Opp. to Mot. (ECF No. 15) at 3 (citing Aff. of VisionSoft Chief Executive Anji J. Reddy (ECF No. 15-1), Ex. A).) VisionSoft contends Reddy reached out to the Virginia Secretary of State, State Corporation Commission upon learning of Defendants' contention and was told "VisionSoft has never been out of compliance and never had its corporate franchise revoked," and that the error on the agency's website indicating VisionSoft had been "purged" had been corrected. (*Id.* at 3 (citing ECF No. 15-1 ¶ 4.) VisionSoft maintains the word "purged" has no legal significance. Thus, VisionSoft argues, "the request for judicial notice is seen to be inappropriate, as the supposedly authoritative agency record (not even a court record) is showed to be subject to error." (*Id.* at 5 (citing *In re Synchronoss Securities Litigation,* 705 F. Supp. 2d 367 (D.N.J. 2010) ("[J]udicial notice is improper if a legitimate question exists as to the underlying source of the information.").)

Cognitus replies that VisionSoft's contentions "are without factual support and are contrary to the current official records" kept by the Virginia agency. (Defs.' Reply (ECF No. 18) at 2-3.) Specifically, Cognitus contends the entity that was purged is different from the VisionSoft that proffers the Certificate of Good Standing. (*Id.* at 3.)

VisionSoft further seeks this Court's acceptance of a *sur-reply* contending that the Motion for Judicial Notice "has morphed into a highly charged contest having multiple disputed dimensions, completely unsuitable for the exercise of judicial notice." Specifically, VisionSoft calls Cognitus's claim that VisionSoft incorporated a new entity with a similar name is an effort to deceive the Court "scandalous," with "no basis in fact." (Pl.'s Supp. Br. in Opp. to Mot. for Judicial Notice (ECF No. 19) at 1.) VisionSoft contends CEO Reddy "did not apply for the

creation of a new corporate entity, nor was he required to submit the application forms, articles of incorporation or the fee required for incorporation of a new entity." (*Id.* at 2.) Instead, VisionSoft argues, "The clerk exercised discretion in order to respond appropriately to the situation at hand, which was unusual but by no means unheard of." (*Id.*) VisionSoft contends Reddy's discussion with the clerk "revolved around the fact that he had made numerous attempts since 2007, documented by certified mail receipts which he has retained, in a prolonged and unsuccessful attempt to have the corporate address updated in the Virginia corporate records and to have annual report forms sent to the new address each year." (*Id.*) It was, VisionSoft argues, "a prosaic office error which had evaded correction for over ten years." (*Id.*) Finally, VisionSoft contends, Defendants' "Certificate of Fact attesting to the state of the corporate unit's record at some prior time does not falsify the Certificate of Good Standing and the subsequent restoration of [VisionSoft's] status in the state's official records." (*Id.* at 3.)

Cognitus urges the Court to refuse the *sur-reply* as in violation of Local Civil Rule 7.1 providing that *sur-replies* require the permission of the judges assigned to the case, which did not occur here. (Defs.' July 15, 2019 Letter (ECF No. 20) at 1.) More substantively, Cognitus argues VisionSoft misstates Defendants' position, which is that the corporation that filed this action is identified by the Virginia State Corporation Commission as SCC No. 06284038, that this entity is listed as "purged" by the Virginia State Corporation Commission, and that this entity is distinct from the corporation in whose name the Agency issued the Certificate of Good Standing, which is a corporation associated with the SCC No. 08457475 and identified as being formed on June 24, 2019. (*Id.* at 2 (citing Supp. Decl. of Elliott J. Stein (ECF No. 18-1) Exs. A-C).)

As a threshold matter, the Court observes that pursuant to L.Civ.R. 7.1(d)(6), *sur-replies* are permitted only with permission of the Court. *Roggio v. McElroy, Deutsch, Mulvaney & Carpenter, LLP.*, No. 10-0777, 2014 WL 1716222, at *3 (D.N.J. 2014). In the absence of obtaining the Court's permission, the Court is not required to consider VisionSoft's supplemental submission and may strike it from the record. *Id.* (citing *Slimm v. Bank of Am.,* No. 12-5846, 2013 WL 1867035, at *2 n.10 (D.N.J. May 2, 2013).) But, striking it from the record is not obligatory, and the Court declines to exercise this option here. Thus, the Court has reviewed VisionSoft's *sur-reply* as it considered these motions.

The factual bases for the Motion for Judicial Notice and the Motion to Dismiss on standing issues pursuant to Fed. R. Civ. P. 17(b)(2) are heavily intertwined and so the Court discusses them together.

Pursuant to the Federal Rules of Evidence, a Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also U.S. v. Carr*, 25 F.3d 1194, 1203 (3d Cir. 1994). Taking notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment so long as the facts are noticed in accordance with the Federal Rules of Evidence. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). However, it "is improper for a court to take judicial notice of the veracity and validity of a public document's contents when the parties dispute the meaning and truth of the contents." *See, e.g., Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (reversing a district court's grant of a motion to dismiss where the court not only took judicial notice of

undisputed matters of public record but also took judicial notice of "disputed facts stated in public records" and relied on the validity of those facts in deciding the motion to dismiss).

Cognitus seeks to have this Court judicially notice a fact that is the subject of intense dispute among the parties. Cognitus asks this Court to judicially notice the fact that the Virginia State Corporation Commission lists the entity called VisionSoft Consulting Inc. and associated with the SCC No. 06284038 as being listed as purged from the State Corporation Commission's database of active corporations.

Even were the Court inclined to grant the Motion for Judicial Notice, this does not necessarily provide support Cognitus's arguments for the Motion to Dismiss the Complaint for VisionSoft's lack of standing pursuant to Federal Rule of Civil Procedure 17.

In the Judicial Notice Motion, Cognitus proffers documents it represents are the results of two so-called Business Entity Searches it conducted on the Virginia State Corporation Commission website, one for the term "visionsoft" and the other for "vision soft." (Stein Decl. Ex. C.) Both searches returned a list of companies that potentially are matches for those terms. The search for "visionsoft" yields only two results: VisionSoft Consulting Inc., SCC No. 08457475, which is listed as "active": and VisionSoft Inc., SCC No. 05980578, which is listed as "purged." (*See id.*) The search for "vision soft" yields 2,167 results, though only two are of interest here: Vision Soft Consulting Inc., having an SCC No. 06284038, which is listed as "purged": and Vision Soft Technologies Incorporated, having an SCC No. 05459052, which

also is listed as "purged." (*See id.*) Cognitus contends the Vision Soft Consulting Inc. associated with the SCC No. 06284038 is the same VisionSoft that is the Plaintiff in this litigation.[3]

Pursuant to Federal Rules of Civil Procedure, the capacity of a corporation to maintain an action in a federal district court is determined by the law under which that corporation was organized. Fed. R. Civ. P. 17(b)(2). As the Complaint identifies VisionSoft as a Virginia corporation, this Court must look to the laws of that commonwealth.

Article 16 of the Virginia Code governs the dissolution of corporations. The Code provides that the failure of a domestic corporation to file its annual report or pay its annual registration fee on or before the last day of the fourth month following its annual due date shall result in the automatic termination of the company's corporate existence as of that date. Va. Stat. Ann § 13.1-752. The statute further provides that a terminated corporation may apply to

---

[3] At oral argument, Cognitus participated in the following colloquy:

> THE COURT: Well, what's the company that started this lawsuit?
> COGNITUS: The company that started this lawsuit is VisionSoft with Vision and Soft with a space in between in it, comma, Inc. bearing—bearing a Virginia corporation number, I will give you that as well.
> THE COURT: Just VisionSoft?
> COGNITUS: Vision Soft Consulting, comma, Inc., but there's a space between Vision and Soft, I'm quoting to the Virginia records.
> THE COURT: This is the old corporation.
> COGNITUS: This is the old corporation. Bearing number 06284038 on the Virginia records, all of which have been presented to the Court. The Court—the certificate of good standing presented by Mr. Rosen has a corporation called VisionSoft, one word, Consulting, comma, Inc., and it—its corporate number is 08457475.

(July 23, 2020 Oral Arg. Tr. at 8:21-9:12.)

the Commission for reinstatement within five years of its termination. Va. Stat. Ann. § 13.1-754. Should reinstatement follow, "the corporate existence shall be deemed to have continued from the date of termination as if the termination had never occurred." Va. Stat. Ann. § 13.1-754(C).

Cognitus claims VisionSoft's charter was revoked in 2011 and that the company was purged from the State Corporation Commission's records on June 30, 2016. (ECF No. 18 (citing First Stein Decl. (ECF No. 13-1), Attachments 1–4; Supp. Decl. (ECF No. 18-1) at ¶ 2, Exhibits A, B and C).) To evidence this, Cognitus proffers a "Certificate of Fact," issued by the Clerk of the Commission stating first that Vision Soft Consulting Inc. "was automatically terminated as of April 30, 2011" for failure to pay the required annual registration fee and that "Vision Soft Consulting, Inc., formerly a Virginia corporation, was purged from the Clerk's Information System on June 30, 2016." (ECF No. 18-1 (Ex. A) at 5.)

For its part, VisionSoft does not deny that Virginia shows that the corporation's charter was revoked in 2011, nor does it deny that the Virginia State Corporate Commission's records show it as being purged. Instead, it argues that revocation by the Commonwealth, and thus any records purge, was in error. In other words, the dispute of the parties is not what a search of Virginia's State Corporate Commission's website turns up, but instead is over facts underlying result. To support its position, VisionSoft offers a Certificate of Good Standing it says proves that Virginia's Clerk of the Commission recognized the purging was in error. (*See* Aff. of Anji J. Reddy (ECF No. 15-1) ¶¶ 2-4; *see also* Ex. A.)

However, the contention that Vision Soft Consulting Inc. was a terminated corporation in Virginia before the filing of this action is not necessarily dispositive to the question of whether VisionSoft has standing to maintain the litigation. Instead, the issue of a corporation's

capacity to sue is determined by the law of the state in which it was organized. *Chrysler Credit Corp. v. Superior Dodge, Inc.*, 538 F.2d 616, 617–18 (4th Cir. 1976); *see also Stone v. Gibson Refrigerator Sales Corp.*, 366 F. Supp. 733, 734 (E.D. Pa. 1973) (citing Fed. R. Civ. P. 17(b); *American Optical Co. v. Philadelphia Elec. Co.*, 228 F. Supp. 293 (E.D. Pa. 1964). Thus, this Court must look further into that commonwealth's laws governing the corporate existence.

The Virginia Code provides

> The successor to a foreign corporation that transacted business in the Commonwealth without a certificate of authority and the assignee of a cause of action arising out of that business may not maintain a proceeding based on that cause of action in any court in the Commonwealth until the foreign corporation or its successor obtains a certificate of authority.

Va. Stat. Ann. § 13.1-758(B). The statute further provides that a court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until . . . the foreign corporation or its successor obtains the certificate." Va. Stat. Ann. § 13.1-758(C).

Cognitus argues VisionSoft had to have the legal capacity to sue as of the date the Complaint was filed.[4] This overstates Virginia law, which clearly provides a corporate entity lacking a certificate of authority a procedure for curing that deficiency in certain situations. Still, reading § 13.1-758(B) and § 13.1-758(C) together with § 13.1-752 and § 13.1-754(C), it is clear this curing procedure would not be available to a corporation that had been terminated more than five years.

---

[4] At oral argument, Cognitus stated: " But in point of fact, it would have to be a *nunc pro tunc*, not really a reinstatement, because the law says on the date the complaint is filed, it has to have the legal capacity to sue." (July 23, 2020 Oral Arg. Tr. at 12:5-8.)

Cognitus claims VisionSoft was terminated in 2011 and forfeited its reinstatement rights by not seeking reinstatement before June 30, 2016. VisionSoft contends its termination was in error, that it always was in compliance with Virginia laws requiring the yearly filing of annual reports, and that it has thus maintained an unbroken corporate existence. However, VisionSoft's confidence in the Certificate of Good Standing it produces to evidence its assertions is misplaced. The Certificate merely states, "VisionSoft Consulting Inc. is duly incorporated under" Virginia law as of the date of the Certificate, which is June 24, 2019. (ECF No. 15-1, Ex. A). The Certificate does not identify the VisionSoft Consulting that is in good standing by its SCC number. (*Id.*) It does not state that the VisionSoft in good standing as of July 2019 is the same VisionSoft that was terminated in 2011. In fact, the Certificate states, "Nothing more is hereby certified." (*Id.*) In other words, the Court cannot conclude on the basis of the Certificate of Good Standing that the VisionSoft that instituted this action is the same VisionSoft that was organized in 2004, was extent in early 2011, or even was the same VisionSoft that entered the agreements that are at the center of this action.

The Third Circuit has explained that a Rule 12(b)(2) motion

> is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004) (*quoting Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)) (internal citations omitted).

The Certificate of Good Standing proffered by VisionSoft was not attached to the Complaint. Rather, VisionSoft attached the Certificate as Exhibit A to the Affidavit of VisionSoft Chief Executive Anji J. Reddy. (ECF No. 15-1.) That Affidavit itself was submitted in support of VisionSoft's opposition to both the Motion for Judicial Notice and the Motion to Dismiss. Cognitus's Certificate of Fact, of course, also was not attached to the Complaint. Instead, it was attached by Cognitus as Exhibit A to a Supplemental Declaration of Elliot J. Stein, counsel to Cognitus, in support of its Reply Brief to counter VisionSoft's Certificate of Good Standing. (ECF No. 18-1.) Both Certificates, therefore, are proffered by the parties as competent evidence outside the pleading to address the disputed factual issue of whether VisionSoft has standing to maintain this action.

Here, the Court is persuaded that the Certificate of Fact proffered by Defendants does evidence that Vision Soft Consulting Inc. "was automatically terminated as of April 30, 2011." (ECF No. 18-1 (Ex. A) at 5.) It follows from this that, as VisionSoft's Certificate of Good Standing does not evidence that VisionSoft was reinstated prior to 2016, VisionSoft was a terminated corporation when it filed this action, a terminated corporation that did not have the legal ability to cure its termination. Therefore, it is apparent VisionSoft does not have standing pursuant to Fed. R. Civ. P. 17. Accordingly, the Motion to Dismiss is **GRANTED**. Because the Court is granting the Motion on grounds that VisionSoft did not have standing to commence this action, it is unnecessary to consider Defendants' Rule 12(b)(6) arguments. However, because the parties dispute the implications of the search Virginia State Corporation Commission website records, Cognitus's Motion for Judicial Notice is **DENIED** as moot.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 14) pursuant to Federal Rule of Civil Procedure 17(b)(2) alleging Plaintiff lacks standing to bring suit is **GRANTED**, while Defendants' Motion for Judicial Notice is **DENIED** as moot. An appropriate order will follow.

**Date: March 26, 2020**                              */s/ Brian R. Martinotti*
                                                      **HON. BRIAN R. MARTINOTTI**
                                                      **UNITED STATES DISTRICT JUDGE**